UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | |
|---|---|
| LORI PEARSALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-cv-00038-CEA-SKL |
| | ) |
| MCMINNVILLE TN OPCO LLC, d/b/a | ) |
| Willowbranch Health and Rehabilitation | ) |
| Center, f/k/a Raintree Manor; and | ) |
| CLEARVIEW HEALTHCARE | ) |
| MANAGEMENT TN LLC, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

Before the Court is a Motion for Leave to Conduct Arbitration-Related Discovery and to Hold Defendants' Motion Regarding Arbitration in Abeyance [Doc. 16] filed by Plaintiff Lori Pearsall ("Plaintiff"). Plaintiff submitted a sworn declaration in support of the motion [Doc. 16-1]. Defendants McMinnville TN OPCO LLC, d/b/a Willowbranch Health and Rehabilitation Center ("Willowbranch") and Clearview Healthcare Management TN LLC ("Clearview" and collectively, "Defendants") filed a response in opposition [Doc. 20], and Plaintiff filed a reply [Doc. 21]. Neither party requested a hearing on the motion and the Court finds a hearing is not necessary. The motion will be granted in part and denied in part.

### I.    BACKGROUND

Plaintiff's mother, Charlotte Pearsall, began temporarily residing at Willowbranch in May 2016. At some point she returned home but was later readmitted to the facility on a permanent basis. Plaintiff states she signed the paperwork for Charlotte's admission into Willowbranch, presumably referring to the May 2016 admission, but she does not recall "signing any documents

related to arbitration." [Doc. 16-1 at Page ID # 258]. Subsequently, Charlotte herself signed an arbitration agreement, titled "Mediation And Arbitration Agreement" ("Agreement"),[1] which was part of a larger collection of admission-related documents ("Admission Contract"). Charlotte's signature on the Agreement is not dated, but the facility representative's signature is dated February 22, 2018 [*see* Doc. 20-1 at Page ID # 338]. Plaintiff attests she was not present when Charlotte signed the Agreement [Doc. 16-1 at Page ID # 259].

Charlotte was assaulted by another Willowbranch resident on August 27, 2021. Plaintiff alleges Willowbranch "knew or should have known of the assailant's aggressive propensities and failed to protect [Charlotte]," and further that due to Willowbranch's "inadequate care of [Charlotte], she suffered injuries and harm, including blunt-force trauma, delays in care, abuse and neglect, and severe pain." [Doc. 16 at Page ID # 254]. Plaintiff filed suit on August 26, 2022, alleging medical malpractice and tort-based liability [Doc. 1-1].

Defendants filed a Motion to Dismiss or in the Alternative to Stay Proceedings and Compel Arbitration [Doc. 12] on October 12, 2022. In the motion, which is not before the undersigned and will be addressed by the District Court Judge in due course, Defendants assert that this case should be stayed or dismissed because Plaintiff "is contractually prohibited from pursuing her claims in this Court because these claims are subject to a binding 'Mediation and Arbitration

---

[1] Willowbranch was formerly known as Raintree Manor. The documents in the Admission Contract, including the Agreement, refer to Willowbranch as Raintree Manor. In addition, the copy of the Agreement Defendants submitted in connection with the instant motion was not properly scanned/copied, such that the words on the right edge of both pages of the document are cut off [Doc. 20-1]. As far as the Court can tell, the record does not contain a complete copy of the Agreement at all.

2

Agreement', which Plaintiff's Decedent, Charlotte A. Pearsall . . . executed." [Doc. 12 at Page ID # 215].[2]

Plaintiff filed a response in opposition to the motion [Doc. 18] on October 26, 2022. That same day, she filed the instant motion for leave to conduct arbitration-related discovery [Doc. 16]. Her position is that the parties "must be afforded an opportunity to conduct discovery on all of the facts and circumstances surrounding the Agreement before having to argue over its enforceability." [*Id.* at Page ID # 255]. She states that she "intends to request additional medical records from 2018," when the Agreement was executed, "to request information regarding the Defendants' admission process and associated documents," and "to depose LPN Tia Taylor, the representative who executed the Agreement on the facility's behalf." [Doc. 21 at Page ID # 341].

## II.  STANDARDS

"When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). Pursuant to the Federal Arbitration Act ("FAA"), "a district court's consideration of a motion to compel arbitration is limited to determining whether the parties entered into a valid agreement to arbitrate." *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 487 (6th Cir. 2001). An agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. These grounds include "state law contract defenses such as fraud, duress, and unconscionability," which "may be applied by courts to invalidate arbitration agreements." *Fazio v. Lehman Bros, Inc.*, 340

---

[2] Also pending is Plaintiff's Motion to Strike Defendants' Affirmative Defenses [Doc. 19]. That motion is likewise not before the undersigned and will be considered by the District Court Judge or arbitrator in due course.

F.3d 386, 396 (6th Cir. 2003) (citing *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996)). It is well-established that there is a "strong federal policy in favor of arbitration," and that "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (quotation marks and citation omitted). However, the policy favoring arbitration is "not an absolute one," because arbitration is "a matter of consent, not coercion." *Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006) (citation omitted).

"Pursuant to the FAA,[3] 'the party seeking to compel arbitration has the initial burden of establishing the existence of a valid agreement to arbitrate, but once prima facie evidence of the agreement has been presented, the burden shifts to the party opposing arbitration.'" *Heath v. Va. College, LLC*, No. 3:17-CV-366-HSM-DCP, 2018 WL 5317929, at *4 (E.D. Tenn. July 2, 2018) (quoting *Arnold v. Owensboro Health Facilities, L.P.*, No. 4:15-CV-00104-JHM, 2016 WL 502061, at *3 (W.D. Ky. 2016)), *report and recommendation adopted*, 2018 WL 4521027 (E.D. Tenn. Sept. 21, 2018). This Court has held that a "party meets the prima facie burden of establishing an arbitration agreement by providing copies of a written and signed agreement to arbitrate." *Id.*; *see also Wofford v. M.J. Edwards & Sons Funeral Home Inc*, 490 S.W.3d 800, 810 (Tenn. Ct. App. 2015) ("[A]n individual who signs a contract is presumed to have read the contract and is bound by its contents."); *In re Estate of Mayfield*, No. M2018-01977-COA-R3-CV, 2019 WL 4409218, at *9 (Tenn. Ct. App. Sept. 9, 2019) (reasoning that the "courts presume all adults

---

[3] In their motion to compel arbitration, Defendants argued the Tennessee Uniform Arbitration Act governs the Agreement and this dispute [Doc. 12 at Page ID # 218]; however, in their response to the instant motion, Defendants' acknowledge that in the Agreement, the parties stipulated that the FAA governs [Doc. 20 at Page ID # 331].

4

are competent to enter into contracts," such that a party seeking to invalidate a contract based on mental incapacity has the burden of proof).[4]

Once the party seeking to compel arbitration presents such prima facie evidence, the burden shifts to the party opposing arbitration, who then "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Crawford*, 2021 WL 3926244, at *3 (quoting *Great Earth Cos.*, 288 F.3d at 889). "The required showing mirrors that required to withstand summary judgment in a civil suit." *Great Earth Cos.*, 288 F.3d at 889. "If the district court is satisfied that the agreement to arbitrate is not 'in issue,' it must compel arbitration. If the validity of the agreement to arbitrate is 'in issue,' the court must proceed to a trial to resolve the question." *Id.* (citing 9 U.S.C. § 4); *see also In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 382-83 (6th Cir. 2020) (holding that "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue.").

Because the Sixth Circuit holds that the federal summary judgment standards apply in the context of a motion to compel arbitration, the Court will look to Federal Rule of Civil Procedure

---

[4] The question of whether a valid contract was formed is a question of state law. *See Tillman v. Macy's, Inc.,*, 735 F.3d 453, 456 (6th Cir. 2013). "Without a choice of law provision in the contract, Tennessee applies the rule of 'lex loci contractus,' which presumes that 'a contract is [ ] to be governed by the law of the jurisdiction in which it was executed absent a contrary intent.'" *Crawford v. Allenbrooke Nursing & Rehab. Ctr., LLC*, No. 2:21-cv-020540TLP-tmp, 2021 WL 3926244, at *4 (W.D. Tenn. Sept. 1, 2021) (quoting *Blackwell v. Sky High Sports Nashville Operations, LLC*, 523 S.W.3d 624, 632 (Tenn. Ct. App. 2017)). Further, "when all parties 'have acquiesced—without comment—to the use' of a certain state's law, a federal court does not have to 'delve too deeply' into the choice of law analysis." *Id.* (quoting *GBJ Corp. v. E. Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998)). It appears the Agreement was signed at Willowbranch, which is located in Tennessee, and the parties have cited Tennessee law (and federal law) in their briefs. The parties have not cited to a choice of law provision in the Agreement or in the Admission Contract generally [*see* Doc. 18-1]. Accordingly, the Court will apply Tennessee law.

5

56(d) to address the discovery-related issue currently before the Court. This approach has been adopted by this Court and at least two others in the Sixth Circuit. *See Heath*, 2018 WL 5317929, at *6; *AT&T Mobility Servs. LLC v. Payne*, No. 3:17-cv-00649-CRS, 2018 WL 476163, at *1 (W.D. Ky. Jan. 18, 2018); *Palmer v. Mary Jane M. Elliot, P.C.*, No. 20-13209, 2021 WL 1626355, at *2 (E.D. Mich. Apr. 27, 2021). *Cf. Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 841 (6th Cir. 2021) ("Family Dollar makes no claim that Boykin should have requested discovery under the process in Rule 56(d), so we need not consider the issue."). Rule 56(d) provides:

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). "Beyond the procedural requirement of filing an affidavit, Rule [56(d)] has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (citing *Radich v. Goode*, 886 F.2d 1391, 1393-94 (3d Cir. 1989)). A party seeking discovery under Rule 56(d) "must state 'with some precision the materials he hopes to obtain with further discovery.'" *Lookout Mountain Suites, LLC v. Pinkston*, No. 1:18-CV-311, 2021 WL 722732, at *3 (E.D. Tenn. Feb. 24, 2021) (quoting *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004)). They further "must

6

explain how the additional[5] discovery will shed light on issues underlying the pending motions[.]" *Id.* (citation omitted).

### III. ANALYSIS

Plaintiff's position appears to be that discovery will (or at least is reasonably likely to) reveal that Charlotte lacked a meaningful choice when presented with the Agreement during her admission to Willowbranch in February 2018, either because she was incapacitated and was rushed through the process, or because Defendants' representatives otherwise took advantage of her vulnerable state.

Defendants have produced the Agreement with Charlotte's signature. This gives rise to a presumption Charlotte possessed the requisite mental capacity and that she read and accepted the terms of the Agreement. Defendants contend this production is sufficient for the Court to find the Agreement is not "in issue" and to compel arbitration, because the terms of the Agreement "are equitable and do not prejudice Plaintiff" [Doc. 20 at Page ID # 334]. Defendants emphasize the Agreement is not "hidden within the admission documents provided to [Charlotte]"; rather, it is set off from the rest of the Admission Contract, and it begins with a bold, all-caps introductory sentence which explicitly states that, by signing, Charlotte was agreeing to binding arbitration and thereby "**WAIVING THE RIGHT TO A JURY TRIAL FOR ANY DISPUTE**[.]" [*Id.*]. Defendants point out the signature block reiterates this point in bold, all-caps print:

> **THE RESIDENT HAS READ THIS ARBITRATION AGREEMENT, OR HAD IT READ TO HIM/HER, AND HAS RECEI[VED A] COPY OF IT. THE RESIDENT UNDERSTANDS THAT BY SIGNING BELOW HE/SHE IS CONFIRMING THAT HE/S[HE] UNDERSTANDS THIS**

---

[5] The Court notes the initial scheduling conference for this case is scheduled to take place on December 12, 2022, and the parties' Rule 26 report states that they "will exchange initial disclosures by January 9, 2022." [Doc. 26 at Page ID # 363]. Accordingly, it does not appear the parties have conducted any formal discovery yet.

7

**AGREEMENT AND AGREES TO IT, INCLUDING THE WAIVER OF A JURY TRIAL.**

[Doc. 20-1 at Page ID # 338; Doc. 20 at Page ID # 334]. Defendants also point out the Agreement explicitly states Charlotte could receive services from Willowbranch even if she declined to sign the Agreement, and it granted Charlotte the right to revoke the Agreement, at least for a period of time. Defendants emphasize arbitration agreements are favored under Tennessee and federal law, and that Tennessee courts have "specifically held that an arbitration agreement may be valid and enforceable as part of an admission agreement to a nursing home." [Doc. 12 at Page ID # 220].

Plaintiff nevertheless contends the Agreement has "some hallmarks of an unconscionable arbitration agreement in the nursing home context," [Doc. 18 at Page ID # 264]. She argues the overall Admission Contract was 48 pages long and "presumably needed to be signed in an expedient manner, given the nature of the services required," and that the Agreement "appears to be a boiler-plate form, presumably presented on a 'take it or leave it' basis," giving rise to "comparatively unequal bargaining power between the parties." [*Id.* at Page ID # 265]. She contends arbitration would be prohibitively expensive because Charlotte's estate has no assets. Finally, she argues the timing of the execution of the Agreement is "potentially problematic" for several reasons. First, she states that she signed admission-related paperwork for Charlotte in 2016 and did not know Charlotte signed more admission-related paperwork two years later. Second, she does not have Charlotte's medical records from 2018 and "does not recall exactly what was happening with her mother around that time." [*Id.* at Page ID # 267]. Third, Plaintiff argues, if Charlotte "executed the agreement during her residency at the facility, the facility breached its fiduciary duty to her." [*Id.*].

The merits of these positions are not before the Court at this time. As mentioned, whether the Agreement will be enforced will be addressed by the District Court Judge in due course. The

8

question before the Court is whether some limited discovery should be allowed prior to that determination.

The Sixth Circuit fairly recently held in *Boykin* that "a party who adequately puts the formation of an arbitration contract in issue may request discovery on that contract-formation question." 3 F.4th at 841. In *Boykin*, the district court dismissed the plaintiff's claims and compelled arbitration. In so doing, the district court rejected the plaintiff's "sworn denial that he e-signed any contract." *Id.* at 835. The affidavit in question provided that the plaintiff "'unequivocally' did not consent to or acknowledge an arbitration agreement, . . . he had no recollection of taking the arbitration session, . . . he did not have a certificate of completion for the session, and . . . no one ever told him that arbitration was a condition of his employment." *Id.* at 836.

The Sixth Circuit reversed the dismissal of the plaintiff's claims, holding that the plaintiff's affidavit was sufficient to "put the making of the arbitration contract 'in issue.'" *Id.* at 838 (quoting 9 U.S.C. § 4). The court observed that "[s]ome circumstantial evidence" supported the affidavit's denials. *Id.* at 840. Specifically, the plaintiff had requested his personnel file after he was terminated and the records produced "did not include any arbitration agreement." *Id.* at 836. The court distinguished between the unequivocal denials in the plaintiff's affidavit versus "convenient memory lapses," which "do not create factual disputes that are genuine." *Id.* at 839 (citations omitted).

In this case, Plaintiff's affidavit contains no such unequivocal denials. In her briefing on Defendants' motion to compel arbitration, she suggests she needs medical records from 2018 because she does not "recall exactly what was happening with her mother around that time" [Doc. 18 at Page ID # 267], but her brief does not address even generally what was happening with

9

Charlotte at that time.[6] She states in her affidavit that she does not recall signing an arbitration agreement when Charlotte was first admitted to Willowbranch in 2016, but she does not *deny* signing an arbitration agreement at that time, and she does not attest to any efforts to acquire these records to confirm whether she signed one or not. She does not explain what records she possesses or whether they address the February 2018 admittance or Charlotte's condition at that time. She does not provide any information regarding Charlotte's physical or mental condition, and how or why it might contribute to Charlotte's inability to bind herself to a contract.

She alludes to Charlotte's potential incapacitation at the time of her February 2018 admission into Willowbranch. But she does not respond to Defendants' arguments regarding substantive unconscionability, instead defending her position by pointing out Defendants' failure to address procedural unconscionability.

The parties appear to agree the question of the contract's enforceability (i.e., whether it is unconscionable) is for the Court to decide. *See In re: Auto. Parts Antitrust Litig.*, 951 F.3d at 382-83 (holding that "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue."); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (holding that only challenges "specifically [to] the validity of the agreement to arbitrate" – and not "challenges [to] the contract as a whole" – are "relevant to a court's determination whether the arbitration agreement at issue is enforceable"); *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) ("A recurring question under § 2 [of the FAA] is who should decide whether 'grounds . . . exist at law or in equity' to invalidate an

---

[6] The Sixth Circuit has "intimated that either a Rule [56(d)] affidavit 'or a motion' would suffice." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (quoting *Plott v. General Motors Corp.*, 71 F.3d 1190, 1196 (6th Cir. 1995)).

10

arbitration agreement. [We have held] that attacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are within the arbitrator's ken." (citation omitted)); *see also Griggs v. Vanguard Grp., Inc.*, No. CIV-17-1187-SLP, 2018 WL 8758890, at *2-4 (W.D. Ok. Oct. 31, 2018) (allowing discovery only as to the plaintiff's challenges that go to the "making" of the arbitration agreements at issue). In the absence of any argument from the parties, the Court declines to address this issue further. Moreover, a lack of mental capacity goes to contract formation and therefore is a proper consideration for the Court in considering whether to grant Defendants' motion to compel arbitration. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 & 444 n.1 (2006).

This case appears to be somewhat factually unique in that Plaintiff, due to circumstances beyond her control, has no personal knowledge of Charlotte's mental or physical state at the time the Agreement was executed in February 2018, distinguishing this case from *Boykin*, where the plaintiff challenged the formation of his own alleged agreement to arbitrate. Though Plaintiff's affidavit has deficiencies, when combined with the briefs she has filed in this case, it establishes why she lacks personal knowledge (she was not present for the admission, Charlotte has since died, and she does not have medical records from the relevant time period). *Lookout Mountain Suites, LLC v. Pinkston*, No. 1:18-CV-311, 2021 WL 722732, at *4 (E.D. Tenn. Feb. 24, 2021) ("a Rule 56(d) affidavit should explain why the nonmoving party has not previously discovered the additional information" (citation omitted)). Furthermore, discovery has not commenced in this case, and Defendants have now indicated they oppose written discovery prior to the Court's resolution of their motion to compel arbitration [Doc. 26 at Page ID # 363].

Plaintiff provides "concrete examples of the discovery sought," and she makes reasonably clear how she "expects those . . . materials would help [her] in opposing" Defendants' motion to

11

compel arbitration. *Lookout Mountain Suites, LLC v. Pinkston*, No. 1:18-CV-311, 2021 WL 722732, at *3 (E.D. Tenn. Feb. 24, 2021) (citations omitted). That is, she specifically seeks medical records from 2018, "information regarding Defendants' admission process and associated documents," and to depose LPN Tia Taylor, who signed the Agreement and the other documents in the Admission Contract [Doc. 21 at Page ID # 341]. She seeks this information to establish Charlotte's physical and mental state at the time the Agreement was executed, which goes to whether the Agreement was ever actually formed. *See Waller v. Evans*, No. M2008-00312-COA-R3-CV, 2009 WL 723519, at *3 (Tenn. Ct. App. Oct. 26, 2009) ("The degree of mental capacity required to enter into a valid contract is a question of law; however, whether a party possessed such required degree is a question of fact."); *see also Foust v. Comcast Corp.*, No. 3:19-CV-173-HSM-DCP, 2020 WL 1891755, at *5-6 (E.D. Tenn. Jan. 28, 2020) (allowing discovery into disputed facts relevant to whether a non-signatory could compel arbitration), *report and recommendation adopted*, 2020 WL 730872 (E.D. Tenn. Feb. 13, 2020). This information also could be relevant to the unconscionability analysis if the Court ultimately determines that issue is for the Court to decide. *See Wofford*, 490 S.W.3d at 818 ("The determination that a contract or term is or is not unconscionable is made in light of its setting, purpose and effect. Relevant factors include weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes . . . .").

Accordingly, the Court finds Plaintiff has met the requirements of Rule 56(d) and is entitled to conduct limited discovery on the issues of Charlotte's mental and physical state at the time of her February 2018 admission into Willowbranch, and into her interactions with Willowbranch staff during the admissions process. Plaintiff has shown that, without such information, her efforts to put the existence (and potentially enforceability) of the Agreement at issue will be unfairly

12

thwarted. The Court will therefore permit discovery of Charlotte's relevant medical records from 2018 and will permit Plaintiff to depose LPN Tia Taylor. The deposition of LPN Taylor **SHALL** be limited to the circumstances surrounding the February 2018 execution of the Agreement and the Admission Contract. Regarding the medical records, the Court finds Plaintiff is not entitled to Charlotte's medical records from the entirety of 2018 at this stage of the proceedings, but only those records pertaining to Charlotte's mental and physical state at and near the time of the February 2018 execution of the Agreement and the Admission Contract, consistent with the Court's holdings herein. The parties are **ORDERED** to complete this discovery within **45 DAYS** of entry of this Order. The Court will deny Plaintiff's request for "information regarding the Defendants' admission process and associated documents" [Doc. 21 at Page ID # 341], as that request is vague and does not pertain specifically to Charlotte, but rather to admissions generally.

The Court will further permit, but not require, Plaintiff to file a supplemental brief, limited to no more than ten pages, in opposition to Defendants' motion to compel arbitration within **60 DAYS** of entry of this Order. Any supplemental brief should not rehash Plaintiff's previously-made arguments, but should be tailored specifically to the discovery ordered herein. Defendants likewise are permitted but not required to file a response to Plaintiff's supplemental brief, limited to no more than ten pages, within **SEVEN DAYS** of the filing of Plaintiff's supplemental brief.

The Court declines to issue a stay of the case at this time, because, as mentioned above, Defendants' motion to compel arbitration will be decided by the District Court Judge rather than the undersigned. Also as mentioned above, the parties' scheduling conference has not yet taken place, and the timing and management of the case can be addressed during the conference or thereafter.

## IV. CONCLUSION

For the reasons set forth above and to the extent set forth herein, Plaintiff's motion [Doc. 16] is **GRANTED IN PART AND DENIED IN PART**.

SO ORDERED.

ENTER:

*s/ Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE