UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| LORI PEARSALL, | ) | |
|---|---|---|
| | ) | Case No. 4:22-cv-38 |
| *Plaintiff*, | ) | |
| | ) | Judge Atchley |
| v. | ) | |
| | ) | Magistrate Judge Lee |
| MCMINNVILLE TN OPCO LLC, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss for Lack of Jurisdiction or in the Alternative to Stay Proceedings and Compel Arbitration [Doc. 12] filed by Defendants McMinnville TN Opco LLC and Clearview Healthcare Management TN LLC. Plaintiff Lori Pearsall, Administrator of the Estate of Charlotte Pearsall, filed a Response in Opposition. [Doc. 18]. Defendants claim that Decedent Charlotte Pearsall executed a binding "Mediation and Arbitration Agreement," contractually prohibiting pursuit of the claims in the Complaint [Doc. 1] in this Court. [Doc. 12 at 1]. Plaintiff claims that the arbitration agreement is unenforceable against Plaintiff as unconscionable, offering various theories and arguments to support their position. [Doc. 18 at 1 and 5-8]. As explained below, Decedent Pearsall intended to enter into a binding arbitration agreement with Defendants, and the agreement is not unconscionable. Accordingly, Defendants' Motion will be **GRANTED**, and the case will be **DISMISSED**.

### I. FACTUAL BACKGROUND

The facts show that Decedent Charlotte A. Pearsall was admitted as a resident of Willow Branch Health and Rehabilitation Center on May 26, 2016, and was discharged on October 30, 2021. [Doc. 1-1 at 4 and Docs. 13 and 14 at 4 and 3-4]. Plaintiff alleges that Decedent Pearsall

was assaulted in her room on August 27, 2021. [Doc. 1-1 at 4]. Defendants only admit that according to medical records, Decedent Pearsall was sent to the emergency room after reporting a physical altercation with another resident on August 27, 2021. [Docs. 13 and 14 at 4 and 4].

Plaintiff commenced this action on August 26, 2022, alleging negligence under the Tennessee Medical Malpractice Act leading to Decedent Pearsall suffering blunt force trauma, delays in care, abuse and neglect, and severe pain. [Doc. 1]. Defendants filed Answers [Docs. 13 and 14] contemporaneously with their Motion to Dismiss [Doc. 12] on October 12, 2022. Plaintiff responded in opposition on October 26, 2022. [Doc. 18]. Plaintiff was granted the ability to perform limited discovery with respect to the arbitration dispute on December 8, 2022. [Doc. 27]. Subsequently, Plaintiff filed a Supplemental Response to their prior response in opposition on March 9, 2023. [Docs. 32 and 33]. Defendants replied on March 16, 2023, offering further support for their Motion to Dismiss. [Doc. 34].

Defendants attached the arbitration agreement at issue to their Motion to Dismiss. [Doc. 12-1]. The agreement, titled "Attachment S- Mediation and Arbitration Agreement" starts with the following provision[1]:

> BY SIGNING THIS MEDIATION AND ARBITRATION AGREEMENT ("AGREEMENT"), THE RESIDENT AND THE F [sic] UNDERSTAND THAT THEY ARE WAIVING THE RIGHT TO A JURY TRIAL FOR ANY DISPUTE, AND THAT THE D [sic] OF THE ARBITRATOR(S) BINDS BOTH PARTIES, IS FINAL AND NONAPPEALABLE. IF THIS AGREEMENT IS N [sic] SIGNED, THE RESIDENT WILL STILL BE ALLOWED TO RECEIVE SERVICES AT THE FACILITY. THE RESIDEN [sic] UNDERSTANDS THAT HE/SHECAN [sic] SEEK LEGAL COUNSEL PRIOR TO ENTERING INTO THIS AGREEMENT A [sic] ENCOURAGED TO ASK QUESTIONS.

The submitted attachment shows the handwritten initials "CP" at the bottom of Page 1 and

---

[1] Defendants' attachment Doc. 12-1 appears to be a photocopy. It is unclear to the Court if this is exactly the document signed by Decedent Pearsall, or if it is an uncentered electronic copy of the document signed by Decedent Pearsall. The Court notes that some letters and/or words appear to have been cut off and are not completely legible as a result.

shows the signature of "Charlotte Pearsall" on the line labeled as "Signature or Mark of Resident" on Page 2. [Doc. 12-1 at 1 and 2]. It further shows the signature of Tia Taylor, LPN, SSA on the line labeled as "Signature of Facility Representative" with a date of "2-22-18." [Doc. 12-1 at 2]. Attachment S has subsections 1) defining the parties bound by the arbitration agreement, 2) explaining the process to first take disputes to mediation followed by binding arbitration, 3) outlining the process for demanding arbitration and selecting arbitrators, and 4) detailing the arbitration procedure. [Doc. 12-1]. Page 2 of Attachment S includes language outlining timelines for dispute resolution and includes a procedure for revocation of the arbitration agreement. [Doc. 12-1 at 2]. Attachment S concludes with the following passage directly before the signature blocks:

> THE RESIDENT HAS READ THIS ARBITRATION AGREEMENT, OR HAD IT READ TO HIM/HER, AND HAS RECEI [sic] COPY OF IT. THE RESIDENT UNDERSTANDS THAT BY SIGNING BELOW HE/SHE IS CONFIRMING THAT HE/S [sic] UNDERSTANDS THIS AGREEMENT AND AGREES TO IT, INCLUDING THE WAIVER OF A JURY TRIAL.

Plaintiff Pearsall attached a 48-page exhibit[2] to her Response in Opposition titled "ADMISSION AGREEMENT." [Doc. 18-1]. The top of the agreement reads as follows:

> The Admission Agreement ("Agreement") is made effective as of 02/22/18 ("Effective Date") by and between Raintree Investments & Associates, LLC ("the Company") d/b/a Raintree Manor ("Center"), and Charlotte A Pearsall ("Resident").

Section 5.4 on Page 8 [Doc. 18-1 at 8] titled Additional Agreement Terms reads as follows:

> If attached, Attachment S is an Arbitration agreement that, if voluntarily entered into by the Resident and Center, provides an alternative means to dispute resolution. Executing the Arbitration agreement is not a precondition for either treatment or admission to the Center. If attached, Attachment S includes information that the State in which the Center is located requires to be included in the Agreement.

---

[2] After conducting discovery related to the arbitration agreement, Plaintiff submitted a 69-page version of Decedent Pearsall's Admission Agreement to the Willow Branch Facility. [Doc. 32-1]. The Court has reviewed both the original 48-page version and the supplemental 69-page version in their entirety. The 69-page version does not contain any relevant additions to the arbitration agreement dispute, but does include a complete duplication of the original 48-page version. Accordingly, the Court will maintain references to the originally submitted 48-page version throughout as Doc. 18-1.

Page 10 appears to be the end of the main Admission Agreement, with the remaining pages comprising Attachments A through S[3] and various medical history disclosures and consent forms. [Doc. 18-1 at 11-48]. The main Admission Agreement includes the following right before the signature block [Doc. 18-1 at 10]:

> THIS AGREEMENT IS LEGALLY BINDING ON ALL PARTIES. IT SHOULD BE READ CAREFULLY AND UNDERSTOOD BEFORE SIGNING. BY SIGNING BELOW, THE RESIDENT CONSENTS TO BE LEGALLY BOUND BY THIS AGREEMENT AND ACKNOWLEDGES THAT, IN ADVANCE OF SIGNING, THE RESIDENT READ THE AGREEMENT AND ANY QUESTIONS ASKED REGARDING THE AGREEMENT WERE ADEQUATELY ANSWERED, AND AFTER THE PARTIES SIGNED THE AGREEMENT, THE RESIDENT RECEIVED A COMPLETE COPY OF THE EXECUTED AGREEMENT.

Document 18-1 shows that Charlotte Pearsall signed as the "Resident/Representative" and Tia Taylor signed as the "Center Representative" right below the foregoing disclaimer. [Doc. 18-1 at 10]. The signatures are dated "2-22-18." [*Id.*].

## II. LAW

The Federal Arbitration Act ("FAA") enables contracting parties to agree to settle certain contractual disputes with an arbitrator rather than a court. See 9 U.S.C. § 2. The FAA provides in pertinent part:

> A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The principal purpose of the

---

[3] The Court notes that Attachment S included by Plaintiff as Pages 39 and 40 of Doc. 18-1 appears to be identical to Defendants' Doc. 12-1.

FAA, as the Supreme Court recently emphasized in *Morgan*, is to ensure that private arbitration agreements are enforced according to their terms, just as with any other contract. *Morgan v. Sundance*, 142 S.Ct. 1708 (2022) (noting that the FAA's policy "is about treating arbitration contracts like all others"). Dismissal is proper after the grant of a motion to compel arbitration where all remaining claims are subject to arbitration. *Reed v. Best Buy Warehousing Logistics*, LLCs, 625 F. Supp. 3d 662 (N.D. Ohio 2022).

When considering a motion to compel arbitration, the Court has four tasks: (1) determine whether the parties agreed to arbitrate; (2) determine the scope of the arbitration agreement; (3) if federal statutory claims are asserted, determine whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all claims are subject to arbitration, determine whether to dismiss or stay the remaining proceedings. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Compuserve, Inc. v. Vigny Int'l Fin., Ltd.*, 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)).

Should all outstanding claims be subject to an arbitration agreement, an opposing party may attempt to invalidate the arbitration agreement like any other contract by offering valid contract defenses.[4] *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010). "Despite the favored status of arbitration agreements, Tennessee courts have refused to enforce such agreements when they have been found to be unconscionable." *Wofford v. M.J. Edwards & Sons Funeral Home Inc*, 490 S.W.3d 800, 817 (Tenn. Ct. App. 2015) (citing *Trigg v. Little Six Corp.*, 457 S.W.3d 906, 912 (Tenn. Ct. App. 2014)). "The Tennessee Supreme Court recognizes both substantive and procedural elements of unconscionability." *Seawright*, 507 F.3d at 977 (citing *Taylor v. Butler*, 142 S.W.3d 277, 285 (Tenn. 1996) ("The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose and effect. Relevant factors include

---

[4] Here, the only contract defense raised by Plaintiff is that of unconscionability. [Doc. 18].

weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes . . .")); *accord Cooper v. MRM Inv. Co.*, 367 F.3d 493, 503 (6th Cir. 2004); *Philpot v. Tenn. Health Mgmt., Inc.*, 279 S.W.3d 573, 579 (Tenn. Ct. App. 2007). "Tennessee courts, however, 'have tended to lump the two [procedural and substantive unconscionability] together[.]'" *Wofford*, 490 S.W.3d at 818 (quoting *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W.3d 159, 171 (Tenn. Ct. App. 2001)). In conducting this analysis, courts examine whether "the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other." *Mitchell v. Kindred Healthcare Operating, Inc.*, 349 S.W.3d 492, 499 (Tenn. Ct. App. 2008) (quoting *Trinity Indus., Inc.*, 77 S.W.3d at 171).

### III. ANALYSIS

The Court is faced with determining two main issues – first, is there a valid arbitration agreement between the parties,[5] and second, if there is a valid agreement, is the agreement unconscionable such that it should be invalidated.

**Is There A Valid Arbitration Agreement?**

According to the record, there is no dispute over the existence of a signed arbitration agreement between Decedent Pearsall and Defendants. Plaintiff concedes that Defendants have shown the "mere existence of an arbitration agreement," but states that Defendants have not shown that it is "enforceable" between the parties. [Doc. 18 at 3]. This contention lacks merit. Defendants correctly assert "[w]hen one signs a contract, that person is presumed to have knowledge of its contents." *Brubaker v. Barrett*, 801 F. Supp. 2d 743, 751 (E.D. Tenn. 2011). [Doc. 12 at 5]. Further,

---

[5] This determination encompasses the four tasks from *Stout* as outlined above.

in Tennessee, there is a rebuttable presumption that all contracts in writing signed by the party to be bound, or the party's authorized agent and attorney, are prima facie evidence of a consideration. *See* Tenn. Code Ann. § 47-50-103 (supporting the proposition that a party's signature provides a rebuttable presumption of a valid contract between the parties). It is uncontested that Decedent Pearsall signed the Admission Agreement and Attachment S. Plaintiff has provided no evidence to rebut the presumption that Decedent Pearsall intended to enter into a binding arbitration agreement with Defendants. Accordingly, the Court finds that the parties agreed to arbitrate according to the terms of Attachment S.

There is similarly no dispute over the scope of the arbitration agreement. According to the plain language of Attachment S, "…the resident and the facility understand that they are waiving the right to a jury trial for any dispute…" and "[a]ny and all disputes between the Resident and Facility shall be first submitted to mediation and if mediation is unsuccessful, then to binding arbitration…" [Doc. 18-1 at 1]. Put simply, Decedent Pearsall and Defendants intended to waive their rights to a jury trial and submit any and all claims to mediation and/or arbitration. Accordingly, the Court finds that the scope of the arbitration agreement encompasses the claims brought in this matter.

The face of the Complaint [Doc. 1] contains two claims – Count I for "Negligence Pursuant to the Tennessee Medical Malpractice Act, Tenn. Code Ann. §29-26-115, *et seq*." and Count II "Gross Negligence, Willful, Wanton, Reckless, Malicious and/or Intentional Misconduct." [Doc. 1-1 at 5-7]. As Count I is specifically derived under Tennessee state statute, and Count II provides no federal source, the Court finds that there are no federal statutory claims asserted. As such, there is no need to determine if Congress intended any of the claims to be nonarbitrable.

Finally, as the Court has already established that the scope of the arbitration agreement

encompasses all the claims asserted, there is no need for piecemeal decision making on the issue of dismissing or staying the proceedings with respect to any remaining nonarbitrable claims.

Having determined that the parties intended to enter into a valid arbitration agreement, the Court must now address Plaintiff's claims that the agreement is unconscionable and therefore unenforceable.

**Is The Agreement Unconscionable And Therefore Unenforceable?**

As explained above, Tennessee courts typically collapse the dual unconscionability analysis into a singular examination. Plaintiff has provided five theories of unconscionability that the Court will address.

First, Plaintiff argues that the arbitration agreement is unconscionable because the admissions paperwork needed to be "signed in an expedient manner." [Doc. 32 at 6]. The Court disagrees. Section 5.4 of the Admission Agreement clearly states that signing the arbitration agreement is not a precondition for treatment or admission. [Doc. 32-1 at Section 5.4]. It was, in effect, optional. Further, Attachment S provides a procedure for revoking the arbitration agreement should the Resident desire to do so within 30 days of signing. [Doc. 12-1]. Neither of these facts lend any credence to the idea that Decedent Pearsall had to make a rushed decision.[6] Accordingly, the Court declines to find the agreement unconscionable on these grounds.

Second, Plaintiff argues that because Attachment S was part of a larger Admission Agreement totaling 69 pages,[7] it was unreasonable and therefore unconscionable to expect Decedent Pearsall to read and understand the arbitration agreement. As support for their

---

[6] Plaintiff seems to misinterpret the situation at hand. They cite *Wofford v. M.J. Edwards & Sons Funeral Home Inc.* for the proposition that a "necessity of expediency was a factor in determination that [an] arbitration agreement was unconscionable." [Doc. 32 at 6]. As the Court has noted, there was no necessity of expediency here, as the arbitration agreement was not a precondition to admission or treatment.

[7] Plaintiff's original argument was that Attachment S was part of a larger 48-page Admission Agreement [Doc. 18-1], but they have updated that argument in their Supplemental Response to reflect the more recently filed 69-page Admission Agreement. [Doc. 32-1].

proposition, they cite *Raiteri ex rel Cox v. NHC Healthcare/Knoxville, Inc.*, where the court deemed the inclusion of an arbitration provision buried in an 11-page services contract to be a factor weighing in favor of finding the arbitration agreement unconscionable. *Raiteri*, 2003 Tenn. App. LEXIS 957, at *12 (Dec. 30, 2003). [Doc. 32 at 6]. The situation in *Raiteri* is distinguishable. There, the arbitration provision was buried within a larger body of a contract without clear distinction or signaling. Here, Attachment S is a separate 2-page document, clearly denoted as an arbitration agreement with its own signature block and distinct header. Accordingly, the Court declines to find the agreement unconscionable on these grounds.

Third, Plaintiff argues that Decedent Pearsall had no meaningful way to bargain over the agreement, as it appears to be a "boiler-plate form," and it was presented in a "take it or leave it" manner. [Doc. 32 at 7]. Upon review, the Court is not persuaded by this argument. Plaintiff has not provided any Tennessee law to demonstrate that a purely optional arbitration agreement with a revocation provision is somehow manifestly unreasonable or left Decedent Pearsall with no bargaining power. As signing Attachment S was optional and did not impact her admission status or treatment eligibility, if Decedent Pearsall had been unsatisfied with the terms of the agreement, she could have simply not signed it. Accordingly, the Court declines to find the agreement unconscionable on these grounds.

Fourth, Plaintiff argues that arbitration would be prohibitively expensive, leaving Decedent Pearsall's estate with no forum in which to litigate her claims. [Doc. 32 at 7]. Plaintiff further argues that Plaintiff's engagement letter with counsel states that The Higgins Firm, PLLC, has agreed to advance the costs of litigation, but will not advance arbitration costs in the event that the case is ordered to arbitration, thus rendering mandatory arbitration prohibitively expensive. [Doc. 32 at 8].

The Court is not persuaded by either argument. While costs are to be considered in determining whether an arbitration agreement is unconscionable,[8] Plaintiff has provided no evidence that the costs of arbitration will be higher or significantly different from the costs of litigation. The agreement in question states that the parties will share the costs of arbitration equally. [Doc. 12-1]. Plaintiff's counsel agreeing to advance the cost of litigation but not arbitration does not *de facto* render the costs of arbitration prohibitively expensive – Plaintiff should have been aware and/or advised that mandatory arbitration was a possible outcome in this action given the documentation they had on hand when they commenced the lawsuit. Plaintiff has not provided the expected costs of arbitration to compare them to the expected costs of litigation in this Court. Accordingly, the Court declines to find the agreement unconscionable on these grounds.

Finally, Plaintiff argues that the timing of the execution of the arbitration agreement is "problematic." [Doc. 32 at 9]. In their view, if the agreement was executed after Decedent Pearsall was admitted on February 22, 2018, the facility would have breached its fiduciary duty to her. While Plaintiff provides case law for the proposition that medical care providers generally stand in a position of confidence with respect to patients, and in other states the long-term care facility to resident relationship can rise to the level of fiduciary, they concede that Tennessee has not explicitly recognized a fiduciary relationship between long-term care facilities and their residents.

---

[8] Plaintiff provides various legal bases that costs of arbitration should be considered in an unconscionability analysis. [Doc. 32 at 7-8]. The Tennessee Court of Appeals has instructed that "costs should be considered because the arbitration agreement may unreasonably favor the drafter of the agreement since such high up-front costs will deter the pursuit of claims…when the up-front costs of arbitration are disproportionately high compared to the initial costs of instituting litigation…[such circumstances] prohibit many claimants from pursuing a remedy…" *Hill v. NHC Healthcare/Nashville, LLC*, 2008 Tenn. App. LEXIS 265, at *47 (Apr. 30, 2008). The Sixth Circuit weighed in on the topic of arbitration costs in an employment discrimination case, stating "an agreement to arbitrate that places excessive costs on the claimant as a precondition to arbitration may be unconscionable because of the inequality of the bargain, the oppressiveness of the terms, or the one-sided advantage to the drafter." *Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 658 (6th Cir. 2003).

[*Id.*]. This Court declines to make that finding where Tennessee state courts have remained silent on the issue. Accordingly, the Court declines to find the agreement unconscionable on these grounds.

In summary, the Court finds that a valid arbitration agreement was entered into by Decedent Pearsall and Defendants. Further, the Court finds that the arbitration agreement covers all claims brought by Decedent Pearsall's Estate. Finally, the Court disagrees with Plaintiff's arguments that the agreement is unconscionable and thus unenforceable.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's claims are all subject to a valid arbitration agreement entered into by Decedent Pearsall and Defendants. The parties are **ORDERED** to resolve Plaintiff's claims according to the terms prescribed in the Arbitration Agreement. Accordingly, Defendants' Motion to Dismiss for Lack of Jurisdiction or in the Alternative to Stay Proceedings and Compel Arbitration [Doc. 12] is **GRANTED** and this case is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
CHARLES E. ATCHLEY, JR.
UNITED STATES DISTRICT JUDGE